FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 11, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES K.,<br><br>      Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | NO. 1:25-CV-3091-TOR<br><br>ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING COMMISSIONER'S BRIEF |

BEFORE THE COURT are Plaintiff's Opening Brief (ECF No. 9) and the Commissioner's Brief (ECF No. 15). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Opening Brief is **GRANTED**, and the Commissioner's Brief is **DENIED**.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 1

1    **STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4    limited: the Commissioner's decision will be disturbed "only if it is not supported

5    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6    1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7    relevant evidence that "a reasonable mind might accept as adequate to support a

8    conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9    substantial evidence equates to "more than a mere scintilla[,] but less than a

10    preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11    standard has been satisfied, a reviewing court must consider the entire record as a

12    whole rather than searching for supporting evidence in isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

15    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16    rational interpretation, [the court] must uphold the ALJ's findings if they are

17    supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19    ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

20    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity, defined generally as the claimant's ability to perform physical and mental work activities

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 4

on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

1  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

2  capable of performing other work; and (2) such work "exists in significant

3  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);

4  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

5                                **ALJ'S FINDINGS**

6         On October 7, 2019, Plaintiff filed an application for Title II disability

7  insurance benefits and Title XVI supplemental security income benefits, alleging

8  an onset date of August 24, 2018.  Tr. 187.  The application was initially denied

9  and denied again on reconsideration.  Tr. 187.  Plaintiff appeared on a video

10  hearing before an administrative law judge ("ALJ") on July 8, 2022.  Tr. 187.  The

11  ALJ denied Plaintiff's claim on December 29, 2022.  Tr. 206.  Plaintiff appealed

12  the decision to the Appeals Council, which accepted review and remanded the case

13  to the Commissioner.  Tr. 215.  Pursuant to the order of the Appeals Council, the

14  ALJ held a hearing by telephone on July 11, 2024.  Tr. 51.  The ALJ denied

15  Plaintiff's claim on August 3, 2024.  Tr. 40.

16         As a threshold matter, the ALJ found Plaintiff would meet the insured status

17  requirements of the Social Security Act through March 31, 2019.  Tr. 18.  At step

18  one of the sequential analysis, the ALJ found Plaintiff had not engaged in

19  substantial gainful activity since August 24, 2018, the alleged onset date.  Tr. 20.

20  At step two, the ALJ found Plaintiff had the following severe impairments:

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 6

cervical degenerative disc disease; status-post right shoulder separation; depressive disorder; trauma-related disorder; anxiety disorder; attention deficit hyperactivity disorder; substance addition/abuse; drugs and alcohol.  Tr. 20.  At step three, the ALJ found that including Plaintiff's substance use, the severity of Plaintiff's impairments met the criteria of section 12.04 of the *Listing of Impairments* at 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 20.  The ALJ also found that if Plaintiff stopped substance use, he would still have the same combination of impairments as those discussed at step two.  Tr. 22.  Finally, the ALJ found that when Plaintiff is not using substances, the severity of Plaintiff's impairment did not meet or medically equal the severity of a listed impairment.  Tr. 22.  The ALJ then found Plaintiff had the residual functional capacity to perform light work with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds.  The individual can frequently balance, stoop, kneel, crouch, and crawl.  The individual can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery.  The induvial can perform simple, routine tasks, and can tolerate occasional contact with coworkers, supervisors, and the general public.  The individual can tolerate occasional changes to work routines and work processes.  The individual requires regular work breaks at 2-hour intervals.

Tr. 24-25.

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work.  Tr. 37.  At step five, the ALJ found that, if Plaintiff stopped the substance use and considering Plaintiff's age, education, work experience, and

residual functional capacity, there have been jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a production assembler, routing clerk, and assembler of small products. Tr. 38. The ALJ concluded that because the substance use was a contributing factor material to the determination of disability, Plaintiff was not under a disability, as defined in the Social Security Act, October 7, 2019, the alleged onset, through August 3, 2024, the date of the ALJ's decision. Tr. 39.

On April 24, 2025, the Appeals council denied review (Tr. 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for the Court's review:

1. Whether the ALJ properly found Plaintiff's drug addiction and alcoholism material;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly weighed Plaintiff's subjective symptom testimony; and

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 8

1    4.  Whether the ALJ properly assessed the Listings.

2  ECF No. 9 at 2.

3  **DISCUSSION**

4  **A. Plaintiff's Drug Addiction and Alcoholism**

5    Plaintiff contends that the ALJ erroneously found that Plaintiff's drug and

6  alcohol abuse ("DAA") materially contributed to his disability.  ECF No. 9 at 4-11.

7  Pursuant to 42 U.S.C. § 423(d)(2)(C), "an individual shall not be considered to be

8  disabled . . . if alcoholism or drug addiction would . . . be a contributing factor

9  material to the Commissioner's determination that the individual is disabled."

10  Thus, if an ALJ finds a claimant to be disabled and there is evidence of DAA, the

11  regulations require that an ALJ determine whether the claimant would still be

12  disabled if they stopped using drugs or alcohol.  20 C.F.R. § 404.1535.

13    Here, substantial evidence supported the ALJ's determination that Plaintiff's

14  DAA was material to Plaintiff's mental impairments.  First, the ALJ properly

15  found Plaintiff to be disabled prior to assessing Plaintiff's limitations in the

16  absence of DAA.  Tr. 21-22.

17    Plaintiff argues the ALJ erred in concluding Plaintiff had marked limitations

18  in interacting with others and with adapting or managing oneself only when he was

19  using substances.  ECF No. 9 at 5.  The ALJ found Plaintiff had marked limitations

20  in interacting with others and cited to two records in support.  Tr. 22.  The first

from April 2021, where Plaintiff presented to the emergency room as incoherent with wrist restraints because he was thrashing and snapping his teeth.  Tr. 1396. Plaintiff was eventually able to report that he had been using methamphetamine, heroin, and had been drinking heavily the previous four days.  *Id.*  Plaintiff contends this was not a typical presentation of Plaintiff during substance use but a unique medical episode.  ECF No. 9 at 5-6.  However, several of the records Plaintiff relies on do not support this.  *See, e.g.*, Tr. 1199 ("Pt was approx. 25 feet up in a tree threatening to jump in an attempt to hurt himself.  Pt. also snorted and smoked meth and heroin today.");  Tr. 1013 ("[Plaintiff] presents for evaluation after being picked up naked in the streets . . . patient uses heroin, methamphetamine, alcohol."); 1032 ("Contracts for safety.  Security called for safety search." "Pt has no other complaints at this time but becomes agitated when asked what his plan was after his 2nd visit to Detox."); Tr. 1019 ("Patient additionally complains of vague auditory hallucinations."); Tr. 1185 (police called for Plaintiff 3 times in 3 days "initially for running down the street naked, yesterday for falling out of a tree, and today because he burglarized the house and got stuck in a vent or other area for at least 4 hours.").

The second record was from an intake form for impatient detox in February 2023 where Plaintiff reported having a history of combative behavior in a group setting.  Tr. 1675.  Plaintiff argues this statement was made after detox, not while

1   he was using substances.  ECF No. 9 at 6.  However, Plaintiff very clearly

2   indicated on the form he had a *history* of combative behavior, not that was

3   presently combative.  Tr. 1675.  Moreover, the same form also indicated

4   "Continued use despite having persistent or recurrent social or interpersonal

5   problems caused by or exacerbated by the effects of the substance."  Tr. 1676.  The

6   ALJ substantially supported his reasoning.

7        The ALJ additionally found Plaintiff had marked limitations with regard to

8   the ability to adapt or manage oneself.  Tr. 22.  The ALJ cited to records of

9   Plaintiff reporting suicidal ideation with specific plan or attempt, job and housing

10  loss, legal trouble, and severe physical complications.  *Id.*  Plaintiff contends that

11  suicidal ideations occurred even while Plaintiff was sober and that he lost jobs and

12  housing for substance use but also for other reasons unrelated.  ECF No. 9 at 6-7.

13  However, it is not the Court's role to reweigh the evidence presented to the ALJ

14  which Plaintiff is ostensibly asking the Court to do here.  "[I]f evidence is

15  susceptible of more than one rational interpretation, the decision of the ALJ must

16  be upheld."  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  The ALJ

17  provided substantial support for finding a marked limitation in Plaintiff's ability to

18  adapt or manage himself.

19       Plaintiff also challenges the ALJ's finding that Plaintiff significantly

20  improved during periods of sobriety.  ECF No. 9 at 7.  The ALJ mostly relied on

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 11

records from two established periods of sobriety.  The first spanning the majority of 2019 and the second spanning the latter months of 2023.  Tr. 23-24.  The ALJ then assessed Plaintiff's limitations, with supporting citations to the record, for each of the Paragraph B criteria: to understand, remember, or apply information; to maintain social functioning; to concentrate, persist, or maintain pace; and to adapt or manage oneself.  Tr. 23.

Significantly, the ALJ found that with regard to Plaintiff's ability to interact with others, the record established only a moderate limitation when Plaintiff was not using substances.  Tr. 23-24.  The ALJ found that during the first period of sobriety in 2019, Plaintiff consistently attended activities and groups through Frontier Behavioral Health ("FBH") and cited to records spanning the entirety of 2019.  Tr. 23 (citing Tr. 1263, 1261, 1259, 1257, 1255, 1253, 1251, 1249, 1247, 1245, 1243, 1240, 1238).  Additionally, the ALJ noted that during Plaintiff's second period of sobriety, Plaintiff lived in a clean and sober house and reported getting along with his roommate, housemate, and staff with only some anxiety associated with a new roommate.  Tr. 23 (citing Tr. 1783).

Regarding Plaintiff's ability to adapt or manage oneself, the ALJ noted that

> [Plaintiff] reported on psychological evaluation in March of 2018, when reportedly clean and sober for several weeks, that he typically went to the library, ate lunch, took a nap, went to church, and read.  His hobbies/interests included playing the drums and guitar, as well as motorcycles, quads, and weightlifting.  He denied problems with self-care, medication management, meal preparation, or household chores

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 12

including doing laundry, vacuuming, and dusting. He typically scheduled his own appointments with doctors or other offices, was able to use telephones and directories, and able to go shopping for groceries and other personal needs whenever he needed them. He did not have a driver's license and relied on others or public transportation.

Tr. 24 (citing Tr. 946-952).

The ALJ further found that during Plaintiff's first period of sobriety in 2019, Plaintiff consistently denied suicidal ideation and hallucinations, had improved sleep, attended activities and groups through FBH, and was compliant with his medications. Tr. 24 (citing Tr. 1261, 1259, 1253, 1251, 1249, 1245, 1240, 1238). The ALJ then again noted that during Plaintiff's second period of sobriety he was living in a clean and sober house and was getting along well with his roommate and housemate other than a little anxiety. Tr. 24 (citing Tr. 1783).

Plaintiff contends that other evidence in the record indicates that Plaintiff did not have sustained and significant improvement with sobriety. ECF No. 9 at 8-10. Plaintiff cites to evidence of brief bouts of sobriety where Plaintiff was still reporting mental deficits. Again, where two rational interpretations exist, the Court must affirm. Therefore, the Court finds the ALJ's reasoning was substantially supported and did not err in concluding Plaintiff's ADD was material to his disability.

### B. Medical Opinion Evidence

Plaintiff argues the ALJ erred in assessing the medical opinion evidence of

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 13

Dr. Genthe, Dr. Anderson, and Dr. Garner.  ECF No. 9 at 11-15.  As Plaintiff's

alleged onset date was October 7, 2019, the new regulations for how an ALJ must

evaluate medical opinion evidence under Titles II is controlling.  See 20 C.F.R. §

404.1520c (governing medical opinion evidence under Title II); Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18,

2017), available at 2017 WL 168819.  An ALJ must consider and evaluate the

persuasiveness of all medical opinions or prior administrative medical findings

from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b).  The factors for evaluating

the persuasiveness of medical opinions and prior administrative medical findings

include; supportability, consistency, relationship with the claimant, specialization,

and "other factors that tend to support or contradict a medical opinion or prior

administrative medical finding," including but not limited to "evidence showing a

medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements."

20 C.F.R. §§ 404.1520c(c)(1)–(5).

     The ALJ is required to explain how the two most important factors,

supportability and consistency, were considered.  20 C.F.R. § 404.1520c(b)(2).

These factors are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence
>     and supporting explanations presented by a medical source are to
>     support his or her medical opinion(s) or prior administrative medical
>     finding(s), the more persuasive the medical opinions or prior

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 14

1    administrative medical finding(s) will be.

2    (2) Consistency. The more consistent a medical opinion(s) or prior
        administrative medical finding(s) is with the evidence from other
3       medical sources and nonmedical sources in the claim, the more
        persuasive the medical opinion(s) or prior administrative medical
4       finding(s) will be.

5    20 C.F.R. § 404.1520c(c)(1)-(2).

6        The ALJ may, but is not required to, explain how "the other most persuasive

7    factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§

8    404.1520c(b)(2).  However, where two or more medical opinions or prior

9    administrative findings "about the same issue are both equally well-supported ...

10   and consistent with the record ... but are not exactly the same," the ALJ is required

11   to explain how "the most persuasive factors" were considered.  20 C.F.R. §§

12   404.1520c(b)(2).

13       These regulations displace the Ninth Circuit's standard that require an ALJ

14   to provide "specific and legitimate" reasons for rejecting an examining doctor's

15   opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

16   *1. Dr. Genthe, Ph.D.*

17       Plaintiff challenges the ALJ's conclusion that Dr. Genthe's opinion was

18   unpersuasive because it was both unsupported by his own examination and

19   inconsistent with the record as a whole.

20       Dr. Genthe opined Plaintiff had moderate and marked limitations including

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 15

marked limitations in Plaintiff's ability to adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, complete a normal work day without interruptions from psychologically based symptoms, and set realistic goals and plan independently.  Tr. 949.  Dr. Genthe noted Plaintiff's psychological status to be fair, and that Plaintiff would be unlikely to function adequately in a work setting at that time.  Tr. 950.

In finding Dr. Genthe's opinion unpersuasive, the ALJ noted that Dr. Genthe relied solely on subjective testimony because he did not review any records prior to his examination of Plaintiff and further observed that Plaintiff had only been sober at that point for a few weeks.  Tr. 35-36.  However, the ALJ found Dr. Genthe's opinion unsupported because Plaintiff's

> presentation and performance on interview and exam were nevertheless completely normal, with the claimant presenting cooperative and friendly, describing his mood as 'good,' and showing euthymic affect. The claimant presented with no disturbance in reality testing, and he was fully oriented.  His immediate memory and new learning were intact.  His fund of knowledge was intact, with the exception of not knowing the vice president.  The claimant's insight and judgment were fair to good, and his concentration was intact.

Tr. 36.

The ALJ concluded such an evaluation did not support the marked limitations assessed, and "the doctor made no observations that would support the ratings." Tr. 36.

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 16

1    Thus, contrary to Plaintiff's assertion, the ALJ did not reject Dr. Genthe's

2  opinion because he relied solely on Plaintiff's subjective reporting.  The ALJ

3  adequately explained why he found Dr. Genthe's opinion unsupported by his own

4  observations.

5    The ALJ found Dr. Genthe's opinion further inconsistent with the record as

6  a whole, particularly during Plaintiff's two established periods of sobriety.  Tr. 36.

7    Claimant was noted to track discussions well, largely endorsed
   improved sleep, was compliant with his medications, and attended
8    activities and groups.  He got along with his roommate and housemate
   without problem.  And his memory and concentration findings were
9    consistently within normal limits.

10  Tr. 36 (citing Tr. 1263, 1261, 1259, 1257, 1255, 1253, 1251, 1249, 1247, 1245,

11  1243, 1240, 1238, 1851, 1849, 1837, 1835, 1823, 1821, 1806, 1804, 1786, 1769,

12  1732, 1720).

13    The ALJ also relied on Plaintiff's ability to hold a part-time job for several

14  months in 2023 as evidence of his capacity to adapt to changes in a routine work

15  setting; maintain appropriate behavior in a work setting; and complete a normal

16  workday/work week without interruptions from psychologically based symptoms.

17  Tr. 36.  The ALJ further agreed with Dr. Genthe's evaluation that Plaintiff was

18  unlikely to set realistic goals and plan independently in the workplace but

19  concluded such limitation was accounted for by Plaintiff's RFC to perform

20  "simple, routine tasks."  *Id.*

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 17

1    Plaintiff again argues that the record does not show Plaintiff significantly or

2    sustainably improved while sober, however, the Court already found the ALJ

3    substantially supported his reasoning that Plaintiff did have improvement while

4    sober.  Plaintiff also argues that the employment in 2023 did not create an

5    inconsistency because Plaintiff struggled for months, became hopeless and

6    depressed, which led to a relapse and the job's end.  Additionally, Plaintiff asserts

7    that the brief stint of work does not demonstrate Plaintiff can engage in substantial

8    gainful activity ("SGA"), citing to *Gatliff v. Comm'r of the SSA*, 172 F.3d 690 (9th

9    Cir. 1999) in support.  ECF No. 9 at 14.

10    First, *Gatliff* is not persuasive in this context.  That case concerned

11    durational requirements on the concept of SGA.  *Gatliff*, 172 F.3d at 694.  Here,

12    the ALJ did not use Plaintiff's employment in 2023 as evidence that Plaintiff could

13    engage in SGA, only that it demonstrated inconsistency with Dr. Genthe's opinion

14    that Plaintiff had marked limitations in his ability to work.  Tr. 36.  And second,

15    the ALJ need only provide substantial support in his reasoning which equates to

16    "more than a mere scintilla[,] but less than a preponderance." *Hill v. Astrue*, 698

17    F.3d at 1158-59.  Here, the ALJ's citation to both Plaintiff's work experience in

18    2023 and other evidence in the record to support his inconsistency finding was

19    sufficient to meet that threshold.

20    *2. Dr. Anderson, Ph.D., and Dr. Garner, Ph.D.*

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 18

1    Plaintiff argues the ALJ's failure to address the supportability or consistency

2    factor for Dr. Anderson, or the supportability factor for Dr. Garner was reversible

3    error.  ECF No. 9 at 15.

4    The ALJ found "the prior administrative findings by the state agency

5    psychological consultants generally persuasive."  Tr. 37.  The ALJ noted that Dr.

6    Anderson found insufficient evidence to evaluate Plaintiff's claim at the initial

7    determinations but then made mental health findings, "specifically that the

8    claimant was not significantly limited in his ability to understand, remember,

9    concentrate, persist, or maintain pace but that he is able to adapt to simple changes

10    in a routine work setting and 'should limit' working with general public."  Tr. 37.

11    The ALJ did not address the supportability or consistency factors in concluding Dr.

12    Anderson's opinion was persuasive.

13    The ALJ also found Dr. Garner's Title II reconsideration findings

14    persuasive.  Dr. Garner reviewed the record in November 2020 and found Plaintiff

15    was capable of understanding and remembering simple and complex tasks and

16    could perform a regular 40-hour work week with occasional interruptions due to

17    psychological symptoms.  Tr. 161-162.  Dr. Garner further opined Plaintiff was

18    capable of occasional superficial contact with coworkers, supervisors, and the

19    public in the workplace.  Tr. 163.  The ALJ found this opinion to be "more specific

20    and more consistent with the record as a whole" but did not address the

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 19

1  supportability factor.  Tr. 37.

2      The Court finds the ALJ erred in failing to address both the supportability

3  and consistency factors in finding Dr. Anderson's opinion persuasive and failing to

4  address the supportability factor in finding Dr. Garner's Title II reconsideration

5  findings persuasive.  As the Court is remanding the ALJ's decision on other

6  grounds as explained below, on remand the ALJ will articulate how the

7  supportability and consistency factors were considered in his evaluation of Dr.

8  Anderson and Dr. Garner's opinions.

9  **C. Plaintiff's Symptom Testimony**

10     Plaintiff contends the ALJ erred in rejecting his subjective symptom

11  testimony.  ECF No. 9 at 15-18.  An ALJ engages in a two-step analysis to

12  determine whether a claimant's subjective symptom testimony can be reasonably

13  accepted as consistent with the objective medical and other evidence in the

14  claimant's record.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must

15  determine whether there is 'objective medical evidence of an underlying

16  impairment which could reasonably be expected to produce the pain or other

17  symptoms alleged.'"  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

18  (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is

19  not required to show that her impairment 'could reasonably be expected to cause

20  the severity of the symptom she has alleged; she need only show that it could

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 20

reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why he or she discounted claimant's symptom claims).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

*Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's

record," "to determine how symptoms limit ability to perform work-related

activities."  SSR 16-3p, 2016 WL 1119029, at *2.  When evaluating the intensity,

persistence, and limiting effects of a claimant's symptoms, the following factors

should be considered: (1) daily activities; (2) the location, duration, frequency, and

intensity of pain or other symptoms; (3) factors that precipitate and aggravate the

symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-8; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, Plaintiff argues the ALJ erred in three ways. First, Plaintiff contends the ALJ failed to identify with specificity the evidence that contradicted Plaintiff's testimony. Next, Plaintiff again argues that the ALJ's finding that DAA was material to disability was flawed. Finally, Plaintiff challenges the ALJ's finding that the record did not support greater physical limitations than those listed in the RFC. ECF No 9 at 15-18.

Here, the ALJ summarized Plaintiff's symptom testimony from both the 2022 and 2024 hearings. At the 2022 hearing, Plaintiff reported that he had been sober for the previous seven months. Tr. 70. He reported worsening mental health during his sobriety, specifically depression from his bipolar disorder, and that he and his doctor were trying to find the right combination of medications. Tr. 71. He testified that he had been depressed during the entire seven months of his

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 22

1  sobriety.  *Id.*

2      Plaintiff believed he could not keep a job due to attendance issues and noted

3  that he had missed days before because of his substance use or just a lack of

4  interest in the job.  Tr. 72.  Plaintiff reported that he had difficulties in getting

5  along with others but denied having a short temper.  Tr. 73-74.  He also reported

6  having memory issues and a poor ability to focus or concentrate.  Tr. 74-75, 76.

7  Plaintiff noted fluctuating energy levels due to his depression and overall a poor

8  sleep pattern.  Tr. 76, 77.

9      At the 2024 hearing, Plaintiff reported that he had a job washing dishes part

10  time at a restaurant for nearly six months in 2023 but that he lost the job after he

11  relapsed, got a DUI, and served 60 days in jail as a result.  Tr. 94.  He testified that

12  the relapse was brought on by his depression which happens in cycles due to his

13  bipolar with PTSD disorder.  Tr. 95-96.  During these depressive episodes,

14  Plaintiff testified that he goes into a state of hopelessness and does not want to

15  leave his room, and has never held a job for more than a year.  Tr. 96.  Plaintiff

16  stated that he takes medications for his mental health but that they do not help

17  when he goes into a state of depression.  Tr. 96-97.  Plaintiff further explained that

18  his longest period of sobriety was when he spent 18 months at an adult residential

19  facility where he had a provided routine.  Tr. 97.  Plaintiff testified that he did not

20  think he could hold a full-time job for longer than six months from 2018 onward

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 23

1    because he would miss too many days during his depression cycles.  Tr. 98.

2        Plaintiff also reported that he had problems getting along with co-workers

3    and that he had a poor memory as a result of a car wreck in 2006.  Tr. 99.  He

4    stated he could only focus 20 to 30 minutes at a time before becoming frustrated

5    and irritated.  Tr. 100-101.  Plaintiff reported low energy levels and that some days

6    he stays in his room all day except to get meals.  Tr. 102.  While in his room,

7    Plaintiff stated that he plays video games, watches YouTube, or just sleeps.  *Id.*

8    During a good month he may do this ten days a month while other months it is

9    every day for multiple months which leads to a relapse.  *Id.*  Plaintiff reported that

10    he does well in a treatment facility because he had a daily routine.  Tr. 103.

11    Plaintiff testified that he uses his mountain bike or the bus to get around.  Tr. 93.

12        The ALJ found Plaintiff's impairments could reasonably be expected to

13    cause the alleged symptoms; however, Plaintiff's statements concerning the

14    intensity, persistence, and limiting effects of those symptoms were not entirely

15    consistent with the evidence.  Tr. 26.

16    The claimant alleges that he has been disabled since August 24, 2018.
     As of June 2024, he had participated in 8 detoxification programs, 4
17    outpatient treatment programs, and 4 inpatient treatment programs.
     The record, discussed below, shows several relapses and significantly
18    decreased functioning when using and detoxing from substances.  But
     the record and claimant's testimony also show 2 distinct periods of
19    sobriety, in 2019 and 2023, during which the claimant reported
     significantly improved functioning, which was also demonstrated in the
20    clinical findings.  These records show that, when not using substances,
     the claimant is able to function as outlined in the residual functional

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE
COMMISSIONER'S BRIEF ~ 24

capacity.

Tr. 26.

The ALJ then proceeds with an in-depth review of Plaintiff's medical history from March 2018 through June 2024. Tr. 26-34. The ALJ concluded the "limitation to light work with postural limitations is consistent with the claimant's history of cervical fusion, mild degenerative disc disease changes, and history of right shoulder dislocation." Tr. 34. The ALJ found greater external limitations were not established by the record because "clinical exams revealed normal gait and strength, and at times normal range of motion." *Id.*

The ALJ also concluded that the RFC's mental limitations were consistent with Plaintiff's demonstrated function when not using substances and relied on Plaintiff's ability to hold a job for the latter months of 2023 while clean and sober. "[T]he claimants success in this job supports the conclusion reasonably drawn from his own contemporaneous reports in the clinical findings during this and the previous period of sobriety that the claimant is able to perform the mental demands outlines in the residual functional capacity." Tr. 35. The ALJ further explained that "[t]he above discussion of the medical evidence of record establishes that the claimant has significant functional limitations, thus supporting his testimony to some degree. But the treatment record fails to establish more restricted functioning than outlined in the residual functional capacity when claimant is clean and sober."

1    *Id.*

2         The Court agrees with Plaintiff that the ALJ failed to identify with

3    specificity what testimony was not credible and what evidence undermined

4    Plaintiff's subjective complaints.  Rather, the ALJ simply recited the medical

5    evidence and concluded that it supported his RFC determination.  *Brown-Hunter v.*

6    *Colvin*, 806 F.3d 487 (9th Cir. 2015) ("[A]n ALJ does not provide specific, clear,

7    and convincing reasons for rejecting a claimant's testimony by simply reciting the

8    medical evidence in support of his or her residual functional capacity

9    determination.").   For example, the ALJ relies heavily on Plaintiff's part-time job

10    he held in 2023 as a basis for concluding Plaintiff is able to perform the mental

11    demands laid out in the RFC but fails to address Plaintiff's testimony that he cycles

12    through depression every few months and the job ended after a decline in his

13    mental health led to his relapse and jail time.

14         The Commissioner argues that the ALJ did properly discount Plaintiff's

15    symptom testimony because the ALJ observed numerous medical records that

16    indicated Plaintiff's symptoms were not limiting as alleged.  ECF No. 15 at 7.  The

17    Commissioner then identifies what evidence undermines what testimony.  *Id.* at 3-

18    12.  However, the ALJ did not tie any of the medical evidence to specific pieces of

19    Plaintiff's testimony as the Commissioner has done here, and the Court cannot rely

20    on "*post hoc* rationalizations that attempt to intuit what the adjudicator may have

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 26

been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

As for Plaintiff's physical limitations, Plaintiff again argues that the ALJ failed to identify what evidence contradicted Plaintiff's testimony and erred in concluding the record did not reflect greater physical limitations than those listed in the RFC. ECF No. 9 at 17-18. The Court disagrees. First, a review of the transcripts from both the 2022 and 2024 hearings do not reveal any testimony by Plaintiff as to his physical impairments, only his mental impairments. Thus, the ALJ did not err in that regard. And second, Plaintiff does not cite to any records in support of his argument that his physical limitations exceeded those listed in the RFC. Finally, Plaintiff's argument that the ALJ erred in concluding Plaintiff's DAA was material to his disability was already addressed.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court finds the ALJ's failure to identify what evidence discounted Plaintiff's symptom testimony as to his mental impairments was not harmless. Plaintiff testified that during his depressive episodes, he sequestered himself to his room for days or months at a time and believed he could not maintain a job due to attendance issues. At the 2024 hearing, the vocational expert testified that missing more than one and a half days of work per month would rule out unskilled work thereby eliminating any

jobs in the national economy that Plaintiff could perform.  Tr. 107.  Therefore, the

ALJ committed reversible error and on remand will reevaluate and make specific

findings of credibility as to Plaintiff's symptom testimony of his mental

impairments.

### D. "Paragraph C" Listing

Plaintiff contends the ALJ erred by not properly considering if Plaintiff had

met "paragraph C" of Listings 12.04, 12.06, 12.11, and 12.15.  ECF No. 9 at 18.

"Paragraph C criteria are an alternative to the paragraph B criteria under listings

12.02, 12.03, 12.04, 12.06, and 12.15."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  To

satisfy the paragraph C criteria, a mental disorder must be "serious and persistent"

meaning "there must be a medically documented history of the existence of the

disorder over a period of at least 2 years, and evidence that satisfies the criteria in

both C1 and C2."  *Id.*  The C1 criterion are satisfied "when the evidence shows that

you rely, on an ongoing basis, upon medical treatment, mental health therapy,

psychosocial support(s), or a highly structured setting(s), to diminish the symptoms

and signs of your mental disorder."  *Id.*  The C2 criterion are satisfied "when the

evidence shows that, despite your diminished symptoms and signs, you have

achieved only marginal adjustment."  *Id.*  "Marginal adjustment" is defined as a

claimant having "minimal capacity to adapt to changes in [the claimant's]

environment or to demands that are not already part of [the claimant's] daily life."

1

*Id.*

2    Here, the ALJ found that that the "paragraph C" criteria of the applicable

3    12.00 listings were not satisfied "because the evidence fails to establish that,

4    despite treatment, the claimant has a minimal capacity to adapt to changes in

5    environment or to demands that are not already part of his daily life."  Tr. 24.

6    Plaintiff contends that the record reflects Plaintiff had marginal adjustment despite

7    ongoing reliance on structured support and ongoing treatment and the ALJ erred in

8    making such a conclusory finding.  ECF No. 9 at 20-21.  The Court disagrees.

9    "It is unnecessary to require the Secretary, as a matter of law, to state why a

10    claimant failed to satisfy every different section of the listing impairments."

11    *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  It is sufficient if the

12    ALJ's conclusion is supported by the ALJ's prior discussion of the medical

13    evidence.  *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  Here, the

14    ALJ in detail discussed the evidence of Plaintiff's ability to adapt and manage

15    himself in addressing the "paragraph B" criteria.  The ALJ noted that when sober,

16    Plaintiff reported that he

17    typically went to the library, ate lunch, took a nap, went to church, and
      read.  His hobbies/interest included playing drums and guitar, as well
18    as motorcycles, quads, and weightlifting.  He denied problems with
      self-care, medication management, meal preparation, or household
19    chores . . . He typically scheduled his own appointments with doctors
      or other offices, was able to use telephones and directories, and able to
20    go shopping for groceries and other personal needs whenever he needed
      them. . . . During the second period of sobriety in 2023, the claimant

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 29

lived in a clean and sober house and reported that he got along with his roommate housemate without problem . . . .

Tr. 24 (citing Tr. 948).

The ALJ's findings on the "paragraph C" criteria were substantially supported.

## CONCLUSION

The Court reverses and remands this case back to the Commissioner to reweigh both the medical opinions of Dr. Anderson and Dr. Garner and Plaintiff's subjective symptom testimony.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Opening Brief (ECF No. 9) is **GRANTED**.

2.  The Commissioner's Brief (ECF No. 15) is **DENIED**.

3.  The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **close the file**.

DATED February 11, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFF'S OPENING BRIEF AND DENYING THE COMMISSIONER'S BRIEF ~ 30